UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23282-CIV-LENARD/TORRES

IN ADMIRALTY

DANIEL ATTA GYASI,

    Plaintiff,

vs.

M/V "ANDRE", in rem,

    Defendant.
_____ /

**ORDER**

This matter is before the Court on Defendant's Emergency Motion to Dismiss Verified Seaman's Complaint and Emergency Motion to Set Bond [D.E. 17], to which Plaintiff has responded in opposition [D.E. 21]. Upon referral of the matter to the undersigned, the Court conducted an evidentiary hearing on the pending Motions on January 7, 2008. Upon review of the entire record in the case, the Emergency Motion to Dismiss this action will be Denied without prejudice, but the Motion to Set Bond will be Granted.

*I. BACKGROUND*

This admiralty action was initiated through a verified complaint that resulted in the arrest of the cargo vessel M/V "Andre" on December 21, 2007. Plaintiff is resident and citizen of Ghana and employed as an ocean vessel captain. Plaintiff was retained by the owners of the Defendant vessel to captain the "Andre" in June 2007. The vessel is used in cargo operations from South Florida to Haiti and other Caribbean ports. According to Plaintiff's testimony and verified complaint, while the vessel was docked in Haiti, Plaintiff was beaten

on shore by some assailants trying to rob the Plaintiff, which occurred during the course of his employment as a captain of the Defendant vessel.

After persons or watchmen nearby intervened, the assailants fled but left Plaintiff lying on the street.  He temporarily lost consciousness upon being struck in the back of the head.  Plaintiff was also struck in the face.  A police report was taken of the incident but Plaintiff advised the officers that he did not require hospitalization at that time, believing that he was alright and needed to get back to his ship.  Plaintiff claims that he later was taken to a doctor by the ship's owners in Haiti, prior to the return of the vessel, where he was diagnosed with an acute subdural hematoma (blood clot on the brain) that would require surgery.  According to a signed note from a Haitian physician, whose fees were paid for in part by the vessel's owners, Plaintiff would require an operation to resolve or remove the hematoma, at a cost in Haiti of $7,000.

Upon his return to the United States, Plaintiff was also seen by doctors who confirmed that original diagnosis.  Plaintiff claims that Defendant's owners did not comply with their maintenance and cure obligations by paying for the required operation.  Instead, Plaintiff testified that the owners compelled Plaintiff to return to his home country and relieved him of his position.  Plaintiff's complaint seeks damages for the failure to provide timely maintenance and cure, exacerbating the injury that was originally caused by the assailants in Haiti, as well as for alleged unpaid wages stemming from the work that Plaintiff performed in October and November 2007.  Plaintiff testified that he was not paid his $6,000 salary for the months of October and November, and only was given a lump sum of $4,000 while in Haiti, from which the Plaintiff had to pay for an additional medical bill of $600.  Plaintiff is seeking reimbursement for the cost of the required surgery and associated medical expenses, maintenance for one year while he recovers, compensation for pain and mental suffering,

damages for loss of consortium, plus attorneys' fees. Plaintiff's response to the pending motion also claims entitlement to punitive wages.

Plaintiff was able to testify at the evidentiary hearing and explained that he suffers from some memory loss, dizziness and headaches as a result of his head trauma. He credibly testified as to his injuries and the back wages owed, but also credibly acknowledged that some of the medical bills that he incurred were paid for by the vessel's owners. He credibly testified that he was only due two months back salary, not the $29,000 that is claimed in the response to the motion to set bond.

In any event, this action was initiated on December 21, 2007 and the vessel arrested. The vessel is in the possession of a substitute custodian as ordered by the Court on December 20, 2007 [D.E. 11]. Defendant's owners then filed the pending emergency motions on January 2, 2008, through which they claim that the Plaintiff's allegations are fraudulent because Plaintiff refused medical treatment and Defendant complied with all maintenance and cure obligations. Defendant even claims that Plaintiff forged some of the medical records attached to the verified complaint, for which an immediate dismissal of the action is sought as a fraud on the Court. Alternatively, Defendant seeks an Order setting bond for the immediate release of the vessel.

Plaintiff responds that the medical records and evidence cited are legitimate, that Defendant failed to live up to all the maintenance and cure obligations required which exacerbated Plaintiff's injury, and that any bond to be set in the case should be no less than $1,808,000, based upon a doubling of the total estimate damages of $904,000.

## II.  ANALYSIS

### A.  *Motion to Dismiss*

Defendant's first argument seeks the immediate dismissal of the action based upon a purported fraud on the Court that is being committed by Plaintiff.  Support for that argument is found in the verification of the Motion signed by the vessel's owner, Melanie Seremy Jean, who attests that the Plaintiff never had a one-year contract to captain the vessel, contrary to the allegations of the Complaint.  Ms. Jean also attests that all wages and medical bills were paid for by the owner, as evidenced by the receipts signed by Plaintiff showing payment of $7,000 to Plaintiff while in Haiti ($4,000 for back wages and $3,000 for medical bills). [D.E. 17 at 2-3].

Undoubtedly, the Court has inherent power to sanction a fraud upon the Court, which sanction can include dismissal of a case.  *See, e.g., Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332 (11th Cir. 2002).  A motion to dismiss, however, is not the appropriate vessel with which to reach that conclusion.  A motion to dismiss filed at this stage of the proceeding is governed by Fed. R. Civ. P. 12, where the Court must take the well-pled factual allegations as true and must read the claims to include any theory on which Plaintiff can recover.  *See Lindner v. Prtacarrero*, 963 F.2d 332, 334 (11th Cir. 1992).  A dismissal under Rule 12(b)(6) "is viewed with disfavor and rarely granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997) (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969)).  *See also Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968) ("Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate.").

By that measure, the pending Motion to Dismiss must be Denied.  Here there is no allegation that the verified complaint fails to allege a claim, as would be required to raise a

Rule 12(b)(6) argument. As the pending motion seeks to introduce facts outside the four corners of the complaint to show that the Plaintiff is a fraud, there is no showing why such a finding should be made through a motion to dismiss. And, upon looking at the evidence presented at the evidentiary hearing, the Court cannot find that there is strong showing at this stage that Plaintiff is indeed a fraud. The Court found Plaintiff generally credible based upon the limited record presented. There is no factual dispute that he was, in fact, injured in Haiti. The issue is whether his resulting claims are exaggerated or made-up. Only a more thorough review of the record would allow the Court to make such a finding, and only with the benefit of additional evidence and discovery. At this stage, the pending motion to dismiss is premature and without merit. The entry of this Order is without prejudice, of course, to Defendant seeking to make that showing as the litigation proceeds.

### B.   *Motion to Set Bond*

The release of vessels from arrest is governed by the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. "The Supplemental Rules provide for release of an arrested vessel on the giving of a special bond [Rule E(5)(a)]." *Overstreet v. Water Vessel NorKong,* 706 F.2d 641, 644-65 (5th Cir. 1983). A "special bond" is required by warrants of arrest that have already been issued, *id.* at 644, as contrasted with "general bonds" that are provided for in Rule E(5)(b) that are preemptively issued in advance of any claims that may be filed in the future. The release of a vessel under Rule E(5) results in the transfer of the maritime lien from the vessel to the security. *See, e.g., Folkstone Maritime Ltd. v. CSX Corp.,* 1988 WL 58592 (N.D. Ill. May 31, 1988). The purpose of the bond is to substitute for the actual vessel. *Id.* A vessel owner has the absolute right to obtain the release of the bond upon the posting of the Court approved bond. *See, e.g., Gerard Constr., Inc. v. M/V Virginia,* 480 F. Supp. 488, 491 (W.D. Pa. 1979).

Rule E(5)(a) governs the procedure for releasing the vessel on bond. Rule E(5)(a) provides that whenever "a maritime attachment is issued, the execution of such process shall be stayed, and the property released, on the giving of security to be approved by the Court of Clerk." In the event that the parties cannot agree on the amount of the bond, the Rule adds:

> the Court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisment, whichever is smaller.

This operative Rule for special bonds does not offer further guidance as to the amount that the Court must set. The Court clearly has discretion in this regard to determine what the "reasonable value" of the claim is. *See 20th Century Fox Film Corp. v. M/V Ship Agencies, Inc.,* 992 F. Supp. 1429, 1431 (M.D. Fla. 1997); *Barnett Bank, N.A. v. Tug Chauncey,* 1999 WL 1044822, *3 (M.D. Fla. 1999).[1]

The seaman's burden of producing evidence of expenses for purpose of a maintenance award is "feather light," and a court may award reasonable expenses, even if the precise

---

[1] It is worth noting here that Plaintiff takes the position that under Rule E the Court must set the bond at twice the value of the Plaintiff's claims, quoting the the language found in Rule E(f)(b) ("at least double the aggregate amount claimed by plaintiffs"). That citation is misleading, however, because the particular provision quoted relates specifically to general bonds and not "special bonds" that are at issue here. In a case where a party is relying upon the prior posting of a general bond, the Court must ensure that the bond is double the aggregate amount. In a case where the Court is setting a special bond, however, the operative language of the Rule is quoted above, which contains less restrictive language. The Court finds that there is no requirement in the Rule per se that this bond be for twice the amount of the claimed damages. To the contrary, the Rule requires that the bond *not exceed* twice the amount of the damages, which by definition suggests that the Court can set a bond of a lesser amount depending on the circumstances. *See, e.g., 20th Century Fox,* 992 F. Supp. at 1434 (setting bond based upon calculation of gross amounts of claimed damages, plus interest, *without* doubling that amount) (explaining that release of vessels from arrest should be governed by the Rule E requirements and not the language found in a predecessor statute, 28 U.S.C. § 2462, that requires security of twice the amount claimed, citing *Overstreet,* 706 F.2d at 643 n.12 (same); *Folkstone,* 1988 WL 58592 (same)).

amount of actual expenses is not conclusively proved. *See, e.g., Hall v. Noble Drilling (U.S.) Inc.,* 242 F.3d 582, 588 (5th Cir. 2001). A court may award reasonable expenses even if the seaman fails to conclusively prove the precise amount of actual expenses. *Id.* at 588; *Lodrigue v. Delta Towing, L.L.C.,* 2003 WL 22999425, *10 (E.D. La. 2003). Moreover, any ambiguities or doubts with respect to maintenance are resolved in favor of the seaman. *See, e.g., Durfor v. K-Sea Transp. Corp.,* 2001 WL 856612, *4 (S.D.N.Y. 2001).

The evidentiary burden borne by a seaman to prove exacerbation of injury due to failure to timely provide maintenance and cure is also not a heavy one. It is generally held that the shipowner is responsible for any negligence, however slight, that played a part in producing the seaman's injury. *E.g., In re Cooper T. Smith,* 929 F.2d 1073 (5th Cir. 1991); *Zapata Haynie Corp. v. Arthur,* 980 F.2d 287 (5th Cir. 1992). The law is clear that a seaman is entitled to maintenance and cure while employed by the vessel regardless of whether the seaman is injured "during the pursuit of recreational activities, whether the injury was suffered ashore or aboard." *Gary v. Carnival Cruise Line, Inc.,* 904 F.2d 1527, 1531 (11th Cir. 1990). Under maritime law, maintenance and cure is owed any seaman injured while in service of the ship, without regard to fault, negligence, or causation. See *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 730-31 (1943). The duty to provide maintenance and cure is continuing until the Plaintiff reaches maximum medical improvement and not simply based upon the length of the period of employment. *Gary v. Carnival,* 904 F.2d at 1533; *Farrell v. United States,* 336 U.S. 511, 518, (1949) (maintenance and cure benefits continue until the sailor is "so far cured as possible").

Based on these principles, and based on the allegations of the Verified Complaint and Plaintiff's own testimony at the hearing, the Court finds that Plaintiff has sustained his light burden of showing he is entitled to maintenance and cure benefits. The Plaintiff's estimate

cost of surgery and cost of recovery is reasonable, at least assuming that he receives medical treatment in the South Florida area. Therefore, the claimed amounts for these damages will be included in the bond amount: $50,000 for the surgery, $50,000 for other associated medical costs, and $25,000 for the maintenance while he recovers. The latter amount is likely inflated, because there is no indication in the record that the surgical procedure involved would require an extensive period of rehabilitation. But in an abundance of caution, the Court will grant the Plaintiff full credit as to the claimed medical damages.

Plaintiff then argues that he will be entitled to $500,000 for main and suffering damages. Based upon the Court's assessment of Plaintiff's testimony, however, that amount does not coincide with the extent of Plaintiff's alleged suffering, at least on this record. At best, the most that should be included for this damage amount is the cost of the medical expenses, thus the Court will reduce this amount to $100,000. Furthermore, Plaintiff seeks $150,000 for loss of consortium damages. Again, the record does not support that claim at this stage for damages anywhere near as high as that. Another $50,000 will be included in the bond amount for possible consortium damages.

With respect to Plaintiff's claimed unpaid wages, the Plaintiff's testimony at the hearing does not appear to support the amount claimed in the Response. Plaintiff conceded that he was due for two months' of work, at $3,000 a month. Even if one assumes that the amount he received in November 2007 was deficient, the $29,000 claimed by Plaintiff's counsel is unsupported. Plaintiff testified that he did not have a signed agreement with Defendant for one year's worth of work, and that this was only what the parties had discussed. Based upon his testimony at the hearing, the potential unpaid wage claim in this case does not exceed, at best, $9,000. And, that amount if doubled, as per 46 U.S.C. § 10313, yields only a potential damage award of $18,000.

Finally, Plaintiff seeks a bond amount that includes $100,000 in attorneys' fees. As fees may be a recoverable cost in a maintenance and cure case, *see Lirette v. K&B Boat Rentals, Inc.,* 579 F.2d 968 (5th Cir. 1978), some amount for fees should be included in the bond amount. Given the nature of the case and the relatively limited nature of Plaintiff's claims, a $100,000 fee award is quite speculative. Nevertheless, in an abundance of caution to Plaintiff, the Court will include the amount of fees requested by Plaintiff in the bond amount.

Accordingly, the Court finds that the fair value of Plaintiff's claims in the case is $393,000. Upon adding two years' worth of interest to that sum at 6%, the amount of the bond should be $440,160. Again, in deference to Plaintiff, the Court will also round that amount up to a final calculation of $500,000. The Court sees no basis in this record to double the amount of potential damages in this case. *See 20th Century Fox,* 992 F. Supp. at 1434. This sum is reasonable under these circumstances. The bond amount requested in Plaintiff's response, $1,808,000, is not, for the reasons we have discussed.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Verified Emergency Motion to Dismiss is DENIED. Defendant shall answer the Complaint within ten days of this date through a Verified Claim of Owner as required by Rule C(6).

2. The Motion to Set Bond is GRANTED. A special bond necessary to secure the release of the M/V Andre is hereby set at $500,000.

3.      The Marshal or Substitute Custodian is Ordered to release the vessel upon the Clerk's verification that the required bond has been posted.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of January, 2008.

_____
EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
Honorable Joan A. Lenard
All counsel of record